**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

**EMMANUEL JARRELL,**

**Plaintiff,**

**v.** **Case No: 5:26-cv-39-SPC-PRL**

**TRUIST BANK,**

**Defendant.**

---

# ORDER

This cause, upon referral,[1] comes before the Court on an Amended Motion to Compel Arbitration and to Stay Case ("Amended Motion to Compel Arbitration") filed by Defendant Truist Bank ("Defendant" or "Truist"). (Doc. 25).[2] Plaintiff responded in opposition. (Doc. 29). With leave of Court, Defendant filed a reply brief in support of its Amended Motion to Compel Arbitration. (Doc. 33). Upon due consideration, Defendant's Amended Motion to Compel Arbitration is granted, and the case is stayed pending arbitration.

---

[1] "Because a motion to compel arbitration does not address the merits of the dispute but merely changes the forum, it is a non-dispositive matter that does not require a report and recommendation." *Eugene v. Ciox Health LLC*, No. 2:24-cv-944-SPC-KCD, 2024 WL 4869504, at *1 n.3 (M.D. Fla. Nov. 22, 2024) (citing *Soriano v. Experian Info. Sols., Inc.*, No. 2:22-cv-197-SPC-KCD, 2022 WL 17551786, at *1 (M.D. Fla. Dec. 9, 2022)).

[2] Defendant initially moved to compel arbitration and stay the case on March 20, 2026. (Doc. 17). After Plaintiff filed an amended complaint (Doc. 22) on April 8, 2026, Defendant filed the instant Amended Motion to Compel Arbitration (Doc. 25) on April 23, 2026.

## I. BACKGROUND

On September 13, 2018, Plaintiff opened a bank account ending in 4424 (the "Account") with Truist's predecessor, SunTrust Bank ("SunTrust"), and signed a Personal Account Signature Card ("Signature Card"). (*See* Doc. 25 at p. 3; *see also* Doc. 25-1 at pp. 2, 5).[3] The Signature Card stated that "[i]t is agreed that all transactions between the Bank and the above signed shall be governed by the rules and regulations for this account and the above signed hereby acknowledge(s) receipt of such rules and regulations and the funds availability policy." (*See* Doc. 25 at p. 3; *see also* Doc. 25-1 at p. 5)

Importantly, the Rules and Regulations for Deposit Accounts ("Rules and Regulations") governing the Account, provided that "[o]nce the Account is opened, you agree to be bound by these rules and regulations and that the rules and regulations will continue to govern your Account and your relationship with us even after your Account is closed." (*See* Doc. 25 at p. 3; *see also* Doc. 25-1 at pp. 2, 8). According to the Rules and Regulations applicable to the Account at the time, the rules and regulations "may change from time to time" and those updated rules and regulations will govern the Account. (*See* Doc. 25 at pp. 3-4; *see also* Doc. 25-1 at p. 8). The original Rules and Regulations contained an Arbitration Agreement and explained that a cardholder could opt out of the Arbitration Agreement by sending a written notice within 45 days of opening the Account. (*See* Doc. 25 at p. 4; *see also* Doc. 25-1 at pp. 3, 20-22). According to Truist, Plaintiff chose not to do so, as it has no record of receipt of any written rejection or opt-out of the Arbitration Agreement associated with the

[3] Defendant claims that Plaintiff "opened multiple deposit accounts" with Truist and SunTrust, but Defendant does not provide any further information or context on these other accounts. (*See* Doc. 25 at p. 2).

Account. (*See* Doc. 25 at p. 4; *see also* Doc. 25-1 at p. 3). Instead, Plaintiff kept the Account open and continued to use it.

During Plaintiff's use of the Account, the Rules and Regulations were updated in July 2020 to reflect SunTrust's merger with BB&T to form Truist. (*See* Doc. 25 at p. 4; *see also* Doc. 25-1 at pp. 2-3, 46-103). Defendant sent notice of these changes to Plaintiff through his account statements for the Account. (*See* Doc. 25 at p. 4; *see also* Doc. 25-1 at pp. 2-3, 36-40, 42-44). The updated Rules and Regulations contained an Arbitration Agreement, which stated, in pertinent part, the following:

> **Claims Subject to Arbitration**. A 'Claim' subject to arbitration is any claim, dispute or controversy between you and us (other than an Excluded Claim or Proceeding as set forth below), whether preexisting, present or future, which arises out of or relates to the Account, these rules and regulations, any transaction conducted with us in connection with the Account or these rules and regulations, or our relationship. 'Claim' has the broadest possible meaning and includes initial claims, counterclaims, cross-claims, third-party claims and federal, state, local and administrative claims. It includes disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity and includes claims for money damages and injunctive or declaratory relief. 'Claim' also includes disputes concerning communications involving telephones, cell phones, automatic dialing systems, artificial or prerecorded voice messages, text messages, emails or facsimile machines and alleged violations of the Telephone Consumer Protection Act and other statutes or regulations involving telemarketing. Upon the demand of you or us, Claim(s) will be resolved by individual (not class or class-wide) binding arbitration in accordance with the terms specified in this arbitration agreement.
>
> **Special Definition of 'We,' 'Us' and 'Our.'** Solely for purposes of this arbitration agreement, the terms 'we,' 'us' and 'our[]' . . . refer to SunTrust's employees, officers, directors, parents, controlling persons, subsidiaries, affiliates, successors and assigns. 'We,' 'us' and 'our' also apply to third parties if you assert a Claim against such third parties in connection with a Claim you assert against us.
>
> . . .
>
> **Class Action Waiver**. Notwithstanding any other provision of these rules and regulations, if either you or we elect to arbitrate a Claim, neither you nor we will have the right: (a) to participate in a class action, private attorney general

> action or other representative action in court or in arbitration, either as a class representative or class member; or (b) to join or consolidate Claims with claims of any other persons. . . .
>
> **Severability and Survival**. This arbitration agreement shall survive the closing of your Account and the termination of any relationship between us, including the termination of these rules and regulations. . . .

(Doc. 25-1 at pp. 76-79). Plaintiff continued to use and maintain the Account by making deposits and withdrawals after receiving notice of the changes to the Rules and Regulations governing the Account. (*See* Doc. 25 at p. 5; *see also* Doc. 25-1 at pp. 3, 105-128). Plaintiff later closed the Account on May 21, 2021. (*See* Doc. 25 at p. 5; *see also* Doc. 25-1 at p. 3).

Plaintiff initiated this putative class action against Defendant on January 18, 2026 (Doc. 1), and filed the operative amended complaint on April 8, 2026 (Doc. 22). In the amended complaint, Plaintiff alleges that Defendant violated the Telephone Consumer Protection Act ("TCPA") by calling his cell phone about alleged debt owed using artificial or prerecorded voice calls without his consent. (*See* Doc. 22 at ¶¶ 3-4, 13, 18-19, 29-31, 34, 66-68). Plaintiff contends that he began receiving calls from Defendant in October 2025, and despite requests for Defendant to stop the calls, Defendant allegedly continued to make calls to Plaintiff in an effort to collect a purported debt. (*See id*. at ¶¶ 13-14, 20-23).

Defendant now moves to compel Plaintiff to arbitrate his claims on an individual basis and stay the action pending arbitration, arguing that all requirements to compel arbitration have been met. (Doc. 25). Specifically, Defendant contends that a valid Arbitration Agreement exists, Plaintiff's TCPA claims fall within the scope of the Arbitration Agreement, there has been no waiver of the Arbitration Agreement, and the class action waiver in the Arbitration Agreement is valid and enforceable. (*See id*. at pp. 10-16).

Plaintiff filed a response in opposition, arguing that his TCPA claims fall outside the scope of the Arbitration Agreement because his claims do not arise out of or relate to his "relationship" with Defendant, and that the class action waiver does not apply, since his TCPA claims on behalf of a class are not arbitrable. (Doc. 29). With leave of Court, Defendant filed a reply, explaining why the cases Plaintiff cited in his response are inapposite, and contending that the question of whether Plaintiff consented to receive calls from Truist is an issue for the arbitrator to decide, not the Court. (Doc. 33).

## II. LEGAL STANDARDS

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, generally governs the validity and enforcement of arbitration agreements. *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005) (citations omitted). Under the FAA, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" *See* 9 U.S.C. § 2; *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1329 (11th Cir. 2014). The FAA establishes "a liberal federal policy favoring arbitration [agreements] and the fundamental principle that arbitration is a matter of contract." *See Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1263-64 (11th Cir. 2017) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985) (recognizing that there is an "emphatic federal policy in favor of arbitral dispute resolution").

Section 4 of the FAA grants district courts the authority to compel arbitration once the court is "satisfied that the making of the agreement for arbitration or the failure to comply

therewith is not [a]n issue." *See* 9 U.S.C. § 4. In considering whether to compel arbitration, a court considers the following three factors: (1) "whether a valid written agreement to arbitrate exists"; (2) "whether an arbitrable issue exists"; and (3) "whether the right to arbitrate has been waived." *See Exceen v. Ramirez*, No. 8:24-cv-00880-WFJ-AEP, 2024 WL 3327509, at *2 (M.D. Fla. June 13, 2024) (citing *Williams v. Eddie Acardi Motor Co.*, No. 3:07-cv-782-J-32JRK, 2008 WL 686222, at *4 (M.D. Fla. Mar. 10, 2008)); *Hilton v. Fluent, LLC*, 297 F. Supp. 3d 1337, 1341 (S.D. Fla. 2018).

Once a court is satisfied that a lawsuit involves an arbitrable dispute, the FAA provides that a court must stay the action pending arbitration. *See* 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."); *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992) (per curiam) ("Upon finding that a claim is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration.") (citing 9 U.S.C. § 3); *Caley*, 428 F.3d at 1368 (stating that "the FAA's enforcement sections require a court to stay a proceeding where the issue in the proceeding is referable to arbitration" under a written arbitration agreement) (citation and internal quotation marks omitted); *Norfolk S. Ry. Co. v. Fla. E. Coast Ry., LLC*, No. 3:13-cv-576-J-34JFK, 2014 WL 757942, at *11 (M.D. Fla. Feb. 26, 2014) ("The Eleventh Circuit has held that the proper course is to stay the proceedings rather than dismiss the action.") (citations omitted).

## III. Discussion

Here, Plaintiff does not dispute that by opening the Account and signing the Signature Card, he expressly agreed to the terms of the Rules and Regulations, which governed the Account and included an Arbitration Agreement that he did not opt out of. Plaintiff contends that his TCPA claims fall outside the scope of the Arbitration Agreement because his claims do not arise out of or relate to any "relationship" he had with Defendant, but instead relate to Defendant's attempts to collect a third-party's debt by calling his cell phone number allegedly in violation of the TCPA. (*See* Doc. 29 at pp. 6-11).

The subject Arbitration Agreement provides that, among other things, "any claim, dispute or controversy between you and us . . ., whether preexisting, present or future, which arises out of or relates to . . . our relationship" must be "resolved by individual (not class or class-wide) binding arbitration[.]" (*See* Doc. 25-1 at p. 76). The Arbitration Agreement defines the term "claim" with the "broadest possible meaning" to include "disputes concerning communications involving telephones, cell phones, automatic dialing systems, artificial or prerecorded voice messages, text messages, emails or facsimile machines and alleged violations of the Telephone Consumer Protection Act . . . involving telemarketing." (*See id.*). The Arbitration Agreement also states that "[t]his arbitration agreement shall survive the closing of your Account and the termination of any relationship between us[.]" (*See id.* at p. 78).

When determining whether a dispute is subject to an arbitration agreement, "[a]bsent some ambiguity in the agreement, . . . it is the language of the contract that defines the scope of disputes subject to arbitration." *See E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995)); *see also All. Metals.*

*Inc. v. Hinely Indus., Inc.*, 222 F.3d 895, 903 (11th Cir. 2000) ("When parties define the terms used in a contract, those definitions govern the construction of the contract.") (citations omitted). Courts must then "consider how the factual allegations in the complaint match up with the causes of action asserted and measure that against the language of the arbitration clause" to determine if the claims are within the scope of the arbitration agreement. *See Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1220 n.13 (11th Cir. 2011) (citing *Mitsubishi Motors Corp.*, 473 U.S. at 626).

"[F]ederal courts interpret arbitration clauses broadly where possible," and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *See Solymar Invs., Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 988-89 (11th Cir. 2012) (quoting *First Options of Chicago, Inc.*, 514 U.S. at 945); *Mitsubishi Motors Corp.*, 473 U.S. at 626 (stating that courts are to construe "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration"). Where an arbitration clause is broad, there is a heightened presumption of arbitrability such that "[i]n the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 585-85 (1960)).

To further the FAA's purpose of "guaranteeing the enforcement of private contractual arrangements," arbitration agreements must be interpreted consistent with "the clear intent of the parties." *See E.E.O.C.*, 534 U.S. at 294. Indeed, where an agreement "evidence[s] a clear intent to cover more than just those matters set forth in the contract," the Eleventh Circuit has upheld and enforced broad clauses requiring arbitration of "all disputes between the

parties to the agreement." *See Bd. of Tr. of City of Delray Beach Police & Firefighters Ret. Sys. v. Citigroup Glob. Mkts., Inc.*, 622 F.3d 1335, 1343 (11th Cir. 2010) (citations omitted); *Int'l Underwriters AG v. Triple I: Int'l Invs., Inc.*, 533 F.3d 1342, 1346 (11th Cir. 2008) (explaining that "an arbitration clause in an agreement sometimes can require arbitration of a dispute arising not from the agreement itself but from another source, including another agreement," so long as "the arbitration clause applies to the dispute at issue"); *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1221-22 (11th Cir. 2000) (finding that an arbitration provision to arbitrate "all claims between the parties" was not overly broad or vague and applied not just to claims arising out of the parties' contract). In short, "[a] party cannot avoid arbitration . . . because the arbitration clause uses general, inclusive language, rather than listing every possible specific claim." *See Brown*, 211 F.3d at 1221.

In this case, Plaintiff's TCPA claims fall within the scope of the Arbitration Agreement because the arbitration provision is broad and expressly extends to any "relationship" Plaintiff has, or had, with Defendant. First, the Arbitration Agreement is broadly drafted to cover Plaintiff's TCPA claims against Defendant. (*See* Doc. 25-1 at p. 76) (encompassing "any claim, dispute or controversy between" Plaintiff and Defendant, including alleged violations of the TCPA, which "arises out of or relates to" Plaintiff's "relationship" with Defendant); *Brown*, 211 F.3d at 1220-21 (construing arbitration provision with similarly inclusive language—"any dispute between them or claim by either against the other," and holding that "the parties agreed to arbitrate any and all claims against each other, with no exceptions"); *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 38 (5th Cir. 1990) (explaining that a broad arbitration clause covering "any and all disputes" inescapably means that the arbitration provision was intended to "reach all aspects of the parties' relationship"); *see, e.g.*, *Drozdowski*

*v. Citibank, Inc.*, No. 2:15-cv-2786-STA-CGC, 2016 WL 4544543, at *6-8 (W.D. Tenn. Aug. 31, 2016) (determining that an arbitration clause covering "[a]ll Claims relating to your account, a prior related account, or our relationship" was broad and governed plaintiffs' TCPA claims, even though the bank's calls to one spouse related to an account held solely by the other spouse); *Garcia v. Kendall Lakes Auto., LLC*, No. 18-24397, 2019 WL 1359475, at *7 (S.D. Fla. Mar. 26, 2019) (finding that the arbitration provision covering claims "arising out of or relating to" the Retail Buyers Order or "the parties relationship" was broad and covered the issues raised in plaintiff's complaint); *Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 571 (4th Cir. 1998) (finding that an arbitration clause covering "[a]ny controversy or claim" relating to "any aspects of the relationship" between the parties was very broad and applied to all conflicts between the parties).

Further, despite Plaintiff's contention that he closed the Account several years ago (*see* Doc. 29 at pp. 3-4, 8, 10), the Arbitration Agreement is still valid and enforceable against Plaintiff's TCPA claims, as it explicitly includes a survival and severability clause, providing that the subject arbitration agreement survives the closing of Plaintiff's Account and termination of any relationship between the parties. (*See* Doc. 25-1 at pp. 78-79); *see, e.g.*, *Garcia*, 2019 WL 1359475, at *5-6 (concluding that plaintiff's TCPA claim, which was based on post-agreement conduct, was within the scope of the arbitration clause that explicitly stated it survived termination of the contract); *Shea v. BBVA Compass Bancshares, Inc.*, No. 1:12-cv-23324-KMM, 2013 WL 869526, at *5 (S.D. Fla. Mar. 7, 2013) (noting that if the court were to decide defendant's motion to compel arbitration on the merits, it would find the arbitration provision valid and enforceable against plaintiff's TCPA claim based on the express language

providing that "[t]his arbitration provision shall survive termination of this Agreement and the closing of your Account").

Second, Plaintiff's TCPA claims relate to his relationship with Defendant, as contemplated by the arbitration provision. (*See* Doc. 25-1 at p. 76). As noted above, Plaintiff opened the Account and signed the Signature Card in 2018, and continued to use the Account after the Rules and Regulations were updated in July 2020 to reflect SunTrust's merger with BB&T to form Truist. (*See* Doc. 25-1 at pp. 2-3, 5, 105-128). In the amended complaint, Plaintiff alleges that Defendant violated § 227(b)(1)(A)(iii) of the TCPA by "using an artificial or prerecorded voice in connection with calls it placed to Plaintiff's cellular telephone number and the cellular telephone numbers of the members of the class, without consent." (*See* Doc. 22 at ¶ 66). TCPA claims rely on the claimant not having consented to the calls. While Plaintiff alleges that he did not give consent for the specific calls at issue, his TCPA claims still implicate his relationship with Defendant, as it is undisputed that Plaintiff agreed to the terms of the Rules and Regulations, which governed the Account and contained a broad arbitration provision explicitly stating that any claim relating to "our relationship" (including alleged violations of the TCPA) must be resolved by individual binding arbitration. (*See* Doc. 25-1 at p. 76); *Drozdowski*, 2016 WL 4544543, at *6-8 (finding that plaintiff Monika Drozdowski, who sued Citibank, alleging TCPA violations for calls she received about her husband's alleged debt on his account, had an account with Citibank which subjected her to arbitration for claims concerning her "relationship" with Citibank); *see also Princess Cruise Lines, Ltd.*, 657 F.3d at 1218 (stating that "related to" language in an arbitration provision requires some direct connection between the dispute and the agreement).

As Defendant correctly notes, in defending against Plaintiff's TCPA claims, questions concerning Plaintiff's possible consent will necessarily arise, which implicate Plaintiff's "relationship" with Defendant. *See Carr v. Citibank, N.A.*, No. 15-cv-6993 (SAS), 2015 WL 9598797, at *3 (S.D.N.Y. Dec. 23, 2015) (explaining that "[t]he Card Agreement contemplate[d] the arbitration of any claim related to the parties' relationship," and that issues of consent in TCPA claims "undeniably implicate[] the parties' relationship with each other"); *see also Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1253 (11th Cir. 2014) (recognizing the "consent exception" within the TCPA).[4] Because questions of consent relate to Plaintiff's relationship with Defendant and ultimately go to the merits of Plaintiff's TCPA claims, Plaintiff's claims against Defendant must be arbitrated. *See AT&T Techs., Inc.*, 475 U.S. at 649 ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims."); *see also Carr*, 2015 WL 9598797, at *3 ("[E]ven claims that merely 'implicate' parties rights and obligations under an agreement are subject to arbitration.") (citing *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 23 (2d Cir. 1995)). Such a conclusion is consistent with the FAA's goal of enforcing valid arbitration agreements.

---

[4] To the extent Plaintiff challenges such consent, and to the extent this raises any unresolved ambiguities regarding whether Plaintiff's claim falls within the scope of the arbitration provision, the Court points to the well-settled federal policy requiring that "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25; *Mitsubishi Motors Corp.*, 473 U.S. at 631 (recognizing that there is an "emphatic federal policy in favor of arbitral dispute resolution"); *Sullivan v. Navient Sols., LLC*, No. 6:18-cv-1225-ORL-37LRH, 2019 WL 13245871, at *5 n.7 (M.D. Fla. May 2, 2019) ("[I]n accordance with U.S. Supreme Court precedent, even if there is a dispute concerning the scope of arbitrable issues, the Court is to resolve it in favor of arbitration. . . . for an arbitrator to decide.") (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25).

As a final matter, the subject Arbitration Agreement contains a class action waiver providing that "neither you nor we will have the right . . . to participate in a class action . . . in court or in arbitration, either as a class representative or class member[.]" (*See* Doc. 25-1 at p. 77). Plaintiff contends that the class action waiver does not apply because his TCPA claims are not arbitrable. (*See* Doc. 29 at p. 11). "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms[.]" *Concepcion*, 563 U.S. at 344. The Eleventh Circuit has "regularly enforced arbitration agreements that contain class action waivers." *See Otis v. Arise Virtual Sols., Inc.*, No. 12-62143-CIV, 2013 WL 12106056, at *4 (S.D. Fla. Aug. 5, 2013) (collecting cases).

Because the Court finds that the arbitration provision applies to Plaintiff's claims, Plaintiff must pursue his claims against Defendant on an individual, non-class basis pursuant to the terms of the Arbitration Agreement. *See Kline v. Getaround, Inc.*, No. 3:23-cv-06113-MCR-ZCB, 2023 WL 9325764, at *1 (N.D. Fla. July 5, 2023) (stating that plaintiff "must individually pursue her claims [brought under the TCPA and the Florida Telephone Solicitation Act] against [defendant] according to the arbitration procedures established in the arbitration agreement") (citing *Otis*, 2013 WL 12106056, at *4); *Shea*, 2013 WL 869526, at *3 n.7 (compelling plaintiff's claims brought under the TCPA to arbitration on an individualized basis).

## IV. CONCLUSION

Accordingly, it is **ORDERED** that:

(1) Defendant's Amended Motion to Compel Arbitration and to Stay Case (Doc. 25) is **GRANTED**. The parties shall submit all claims to binding arbitration in accordance with the Arbitration Agreement.

(2) This case is **STAYED** pending arbitration. On or before **October 16, 2026**, and every 90 days thereafter, Defendant Truist Bank shall file a report as to the status of the arbitration proceeding. Additionally, Defendant Truist Bank shall notify this Court within 10 days of the final resolution of the arbitration proceeding or other resolution of this dispute.

(3) The Clerk is **directed** to administratively close this case.

(4) Defendant's earlier Motion to Compel Arbitration and to Stay Case (Doc. 17) is **DENIED as moot**.

**DONE** and **ORDERED** in Ocala, Florida on July 20, 2026.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties